1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GM NORTHRUP CORPORATION, a
Minnesota corporation,

                              Plaintiff,

        v.

MASSACHUSETTS BAY INSURANCE
COMPANY, a foreign insurance company;
HANOVER INSURANCE COMPANY,

                              Defendants.

CASE NO. 3:22-cv-05243-RJB

ORDER ON MOTION FOR
SUMMARY JUDGMENT

        This matter comes before the Court on the Massachusetts Bay Insurance Company

("Mass Bay") and Hanover Insurance Company's ("Hanover") Motion for Summary Judgment.

Dkt. 33.  The Court has considered the pleadings filed in support of and in opposition to the

motion and the file herein.

        In this consolidated case[1], Plaintiff GM Northrup Corporation ("Northrup"), a general

construction contractor, seeks a declaration that its insurance companies, Mass Bay and Hanover,

---

[1] This case was consolidated with *Massachusetts Bay Insurance Co. v. GM Northrup Corp.,* U.S. Dist. Court for the
Western Dist. of Wash. case number 3:22-cv-5465-BJR on October 5, 2022. Dkt. 26.  As it does here, Mass Bay

ORDER ON MOTION FOR SUMMARY JUDGMENT - 1

1  are obligated to defend it and indemnify it in *Beck v. Rhine Demolition, LLC, et. al.,* Pierce

2  County Washington Superior Court case no. 20-2-07117-5 ("*Beck*" or "underlying litigation").

3  Both Mass Bay and Hanover assert cross claims for declaratory relief that they have no duty to

4  defend or indemnify Northup in *Beck*.  The insurance companies now move for summary

5  judgment.  Dkt. 33.  For the reasons provided below, Mass Bay and Hanover's motion (Dkt. 33)

6  should be denied, in part, and denied without prejudice, in part.

7  ## I.  RELEVANT FACTS AND PROCEDURAL HISTORY

8  ### A.  FACTS

9  #### 1.  Allegations in the Underlying Lawsuit

10  On October 15, 2020, the underlying lawsuit was filed.  *Beck v. Rhine Demolition, LLC,*

11  *et. al.,* Pierce County Washington Superior Court case no. 20-2-07117-5. The following

12  allegations are taken from the *Beck* Second Amended Complaint.

13  Northrup served as the general contractor for the construction of an O'Reilly Auto Parts

14  building located in Belfair, Washington through July of 2013.  Dkt. 33-1 at 6.  Northrup

15  allegedly failed to ensure that a fourth sanitary sewer line that extended onto adjacent property

16  was "properly designed, installed, identified, addressed, and/or documented." *Id.* at 8.  Between

17  March and May of 2019, the building on the adjacent property, the North Bay Mortgage

18  building, was demolished by Rhine Demolition LLC and others ("Rhine").  *Id*. at 5.  During the

19  demolition, Rhine broke a sewer line, "damaging and disrupting the sewage out-flow and in-flow

20  for the adjacent O'Reilly Auto Parts Building which was connected to the damaged line."  *Id.*

21

22

23  ───────────────

sought declaratory relief regarding whether it has an obligation to defend or indemnify Northrup in the underling litigation in that case.

24

Rather than repair and/or reporting the break, Rhine "plugged one end of the broken pipe and filled the other end with dirt" causing "a highly pressurized pipeline condition." *Id.*

On May 28, 2019, Christian Beck, an employee at the O'Reilly Auto Parts, went into the store restroom. *Id.* at 11. While Mr. Beck was in the restroom, the "highly pressurized condition within the sewage pipeline" resulted in "a catastrophic reverse flow event that projected large volumes of raw sewage out of the store toilet." *Id.* Mr. Beck was "immediately above" the subject toilet at the time and was drenched in raw sewage. *Id.* at 11-12. Within a week of his exposure to the sewage, Mr. Beck was hospitalized with a "severe staph bacterial infection" - "disseminated/systematic MSSA infection" - which had progressed to toxic shock syndrome. *Id.* at 12 and 16. After admission, he experienced multiorgan failure and sudden cardiac arrest which resulted in significant brain damage and blindness. *Id.* at 17. Mr. Beck is now unable to care for himself. *Id.* He is 24 years of age. *Id.* at 7.

The Second Amended Complaint maintains that Northrup breached its duty of care when it failed to properly supervise and monitor the construction of the O'Reilly Auto Parts building, "including, but not limited to reviewing, approving, identifying, and properly documenting sewage, septic, and utilities-related construction and installation, but also that subcontractors were complying with the industry standards of care and . . . safety protocols for conducting, completing, and documenting their respective work. *Id.* at 19. Mr. Beck and his parents assert negligence claims against Northrup and others for damages. *Id.*

    2.  <u>Parties in this Case and the Insurance Policies</u>

Northrup is nationwide construction company located in Minnesota. Dkt. 1-2. Both Mass Bay and Hanover are Massachusetts companies. Dkts. 1 and 18.

1     On November 26, 2018, an insurance agency in Minnesota submitted a commercial

2     insurance application to the Hanover Insurance Group on behalf of Northrup.  Dkt. 33-3 at 5.

3     (The Hanover Insurance Group is the parent company for both Mass Bay and Hanover.  Dkt. 33-

4     5 at 26).  Northrup's account manager at the insurance company was in Wisconsin.  Dkt. 33-3 at

5     3. The "Account Summary" provided, in part, that

6          About 80% of the field employees are [Minnesota] residents and travel
           temporarily to where the employer has projects.  However, depending on the
7          requirements of many states, [Northrup] wants to be sure their WC carrier is
           licensed to do business in all 50 states. Outside of [Minnesota], we are not able to
8          predict in advance where [Northrup] will have most of their work in 2012. Our
           new carrier must be able to cover all the states and we would agree to audit based
9          on GL exposures being based in Minnesota.

10    Dkt. 33-3 at 90.

11         Based on the application to its parent company, Hanover Insurance Group, Mass Bay

12    issued a Commercial Line Policy ("CLP") to Northrup for the policy period of December 31,

13    2018 to December 31, 2019.  Dkt. 33-5.  The bodily injury provision provides coverage for

14    "those sums that the insured becomes legally obligated to pay as damages because of 'bodily

15    injury' . . . to which this insurance applies."  Dkt. 33-5 at 167.  The CLP contains an exclusion

16    for fungi or bacteria that states that the "insurance does not apply" to:

17         **Fungi Or Bacteria**

18         a. "Bodily injury" or "property damage" which would not have occurred, in whole
           or in part, but for the actual, alleged or threatened inhalation of, ingestion of,
19         contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on
           or within a building or structure, including its contents, regardless of whether any
20         other cause, event, material or product contributed concurrently or in any
           sequence to such injury or damage.

21
22    Dkt. 33-5 at 199.  Further, the CLP has two pollution exclusion endorsements, both of which

23    provide that the "insurance does not apply to:"

24

ORDER ON MOTION FOR SUMMARY JUDGMENT - 4

**Pollution**

> "Bodily injury" . . . which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

Dkt. 33-5 at 197 and 198.  "Pollutants" are, in turn, defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."  Dkt. 33-5 at 125.

Hanover issued Commercial Follow Form Excess and Umbrella Policy ("Excess Policy") to Northrup for the policy period of December 31, 2018 to December 31, 2019.  Dkt. 33-6.  As is relevant here, the Excess Policy contains the following provisions:

1. **Coverage A – Follow Form Excess Liability Insuring Agreement**

> a. We will pay on behalf of the insured those sums in excess of the "underlying insurance" which the insured becomes legally obligated to pay as damages, provided:
>
>> (1) Such damages are covered by "underlying insurance";
>>
>> (2) The event which triggers coverage on the "underlying insurance" takes place during the policy period of this insurance, and
>>
>> (3) The applicable Limit of Insurance of the "underlying insurance" is exhausted by payment of judgments, settlements, related costs or expenses for damages also covered under this policy. We will not pay if the Limit of Insurance of "underlying insurance" is exhausted by payment for damages to which this insurance does not also apply.
>
> b. We will not pay damages that the "underlying insurance" does not pay for any reason other than exhaustion of limits of the "underlying insurance" by payment of judgments, settlements, related costs or expenses.

> c. The terms and conditions of the "underlying insurance" in effect at the inception of this policy apply unless they are inconsistent with the terms and conditions of this policy.
>
> d. The amount we will pay for damages is limited as described in section **VI. LIMITS OF INSURANCE. . . .**

2. **Coverage B – Umbrella Liability Insuring Agreement**

> a. We will pay on behalf of the insured those sums in excess of the "retained limit" shown in the Declarations which the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" and "advertising injury" to which this coverage applies, . . .

Dkt. 33-6 at 16. Coverage B, the "Umbrella Liability," does not apply to a law suit "covered by underlying insurance." Dkt. 33-6 at 17.

Like the CLP, the Excess Policy contains an exclusion for "fungi and bacteria" that provides that coverage does not apply to:

> Any liability or expense arising out of "fungi" or bacteria which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

Dkt. 33-6 at 44. The Excess Policy contains two "pollution" exclusions. Dkt. 33-6 at 35 and 26. As applicable to "Coverage A" - "Follow Form Excess Liability" only, this insurance does not apply to:

> **Pollution**
>
> "Bodily injury" . . . which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

Dkt. 33-5 at 35. The Excess Policy provides that as to Coverage B - "Umbrella Liability" only that the policy does not apply to:

ORDER ON MOTION FOR SUMMARY JUDGMENT - 6

**j. Pollution**

(1) "Bodily injury", "property damage", "personal injury" or "advertising injury" part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

Dkt. 33-6 at 26.  The definition of "pollutants" in the Excess Policy is identical to that in the CLP.  Dkt. 33-6 at 33.

After Northrup tendered defense of the *Beck* case to both Mass Bay and Hanover, Mass Bay agreed to defend it under a reservation of rights.  Dkt. 14-3 at 2.  Mass Bay's reservation of rights relied on the "fungi and bacteria" exclusion and the pollution exclusions.  *Id.*

**B.  PENDING MOTION**

Mass Bay and Hanover have now moved for summary judgment arguing that Minnesota law governs this dispute and that under Minnesota law, the anti-concurrent loss provisions in the policies preclude coverage.  Dkt. 33.  They maintain that they are entitled to declaratory relief.

Northrup opposes the motion and argues that Washington law applies.  Dkt. 34.  It contends that under Washington law, the insurance companies have a continuing duty to defend and under the Washington rule of "efficient proximate cause," the policies provide coverage for Mr. Beck's injuries.  *Id.*  Mass Bay and Hanover have filed a reply (Dkt. 35) and the motion is ripe for review.

## II.     DISCUSSION

**A.  CHOICE OF LAW**

When, as here, a federal court sits in diversity, it applies the forum state's choice-of-law rules to "determine the controlling substantive law."  *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002).  "Under Washington law, when parties dispute choice of law, there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state

before the court will engage in a conflict-of-laws analysis." *Tilden-Coil Constructors, Inc. v. Landmark American Ins. Co.*, 721 F.Supp.2d 1007, 1013 (W.D. Wash. 2010); *Erwin v. Cotter Health Ctrs.*, 161 Wn.2d 676 (2007).  An actual conflict exists when the result of the issues are different under the law of the two states.  *Seizer v. Sessions*, 132 Wn.2d 642, 648 (1997).  Absent an actual conflict, Washington law presumptively applies.  *Erwin* at 692.  As the parties contending that some other state law applies, Mass Bay and Hanover bear the burden of proving the existence of a conflict of law.  *Teck Metals, Ltd. v. Certain Underwriters at Lloyd's, London*, 735 F.Supp.2d 1231, 1234 (E.D. Wash. 2010).

### 1.   Actual Conflict

Mass Bay and Hanover have established that an actual conflict between Washington law and Minnesota law exists.

Washington follows the rule of "efficient proximate cause."  *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wn.2d 171 (2017).  "Under Washington law, the rule of efficient proximate cause provides coverage where a covered peril sets in motion a causal chain, the last link of which is an uncovered peril." *Id.* at 182-183.  "If the initial event, the efficient proximate cause, is a covered peril, then there is coverage under the policy regardless of whether subsequent events within the chain, which may be causes-in-fact of the loss, are excluded by the policy." *Id*. at 183. "[T]he efficient proximate cause rule applies only when two or more perils combine in sequence to cause a loss and a covered peril is the predominant or efficient cause of the loss." *Id*.

As to Northrup's potential liability, the Second Amended Complaint in *Beck* alleges that Mr. Beck injuries were caused by Northrup's negligent design, installation and construction of the sewer line.  It is Northrup's alleged negligence that is the initial event – the efficient proximate cause – combined with the later events – the resultant release of the sewage - that

1   caused Mr. Beck's injuries.  But for the alleged faulty design, installation and construction, the

2   injury would not have taken place.

3         Both the CLP and Excess Policy contain the materially same exclusion for bacteria and

4   fungi exposure that applies "regardless of whether any other cause, event, material or product

5   contributed concurrently or in any sequence to such injury or damage."  This portion of the

6   exclusion is the "anti-concurrent cause" clause.  The CLP and the Excess Policy's Coverage A. -

7   "Follow Form Excess Liability" portion contain the materially same pollution exclusions and

8   also have an anti-concurrent cause clause.  The Excess Policy's "Coverage B." - "Umbrella

9   Liability" portion does not contain an anti-concurrent cause clause.

10        In Washington, the efficient proximate cause rule cannot be circumvented by an

11   exclusionary clause.  *Key Tronic Corp., Inc. v. Aetna (CIGNA) Fire Underwriters Ins. Co*., 124

12   Wn.2d 618, 626 (1994).  Accordingly, the anti-concurrent cause clauses in the polices are not

13   enforceable in Washington.  Minnesota law produces a different result.  Under Minnesota law,

14   parties can contract out of application of the concurrent-causation or efficient proximate cause

15   doctrine with anti-concurrent cause language.  *Friedberg v. Chubb & Son, Inc.,* 832 F. Supp.2d

16   1049, 1057 (D. Minn. 2011).  The result of the issue is different under the laws of the two states

17   so an actual conflict exists.  *Seizer* at 648.  The next step is to consider which of the two states'

18   laws applies.

19                        2.   Washington's Choice of Law Rules

20        Washington courts follow the "most significant relationship test" as set forth in the

21   Restatement (Second) of Conflict of Laws (1971) ("Restatement") § 188 to determine choice of

22   law questions when the parties to a contract did not make an express choice of law.  *Shanghai*

23   *Commercial Bank Ltd. v. Kung Da Chang*, 189 Wn.2d 474, 484–85 (2017); *Erwin* at 1120-1121.

24

Five "contacts" are to be considered in determining which state has the most significant relationship:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Restatement § 188(2). "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.*

a. **Place of Contracting**. The place of contracting does not favor either Minnesota or Washington. Northup and its broker were in Minnesota. Mass Bay and Hanover are in Massachusetts where their executives signed the policies. Northrup's account manager for the insurance broker was in Wisconsin. All parties were aware that the policies would cover all 50 states.

b. **Place of Negotiation of the Contract**. The place of negotiation of the insurance polices is unhelpful in this analysis. There is no evidence that these policies were "negotiated."

c. **Place of Performance**. The place of performance is neutral. The place of performance under the insurance contract was uncertain at the time of contracting. In its application for insurance, Northrup informed Mass Bay and Hanover that it performed construction in all 50 states and needed an insurance carrier that was licensed in all states. The parties contemplated that the policies would cover all 50 states. The place of performance can bear little weight if uncertain or unknown at the time of contracting. Restatement § 188 Comment e.

1          d. **Location of the Subject Matter of the Contract**.  Similarly, the location of the

2   subject matter of the contract is also unhelpful in determining the outcome here.  The parties

3   specifically contemplated that Northrup would be performing construction throughout the

4   country.  The location of these construction projects were not fixed to any particular place.

5          e. **Domicile, Residence, Nationality, Place of Incorporation and Place of Business of**

6   **the Parties.**  This factor is neutral.  Northrup is a Minnesota corporation principally doing

7   business in Minnesota.  Mass Bay is a Massachusetts corporation and Hanover is a New

8   Hampshire corporation; both are principally doing business in Massachusetts.  All parties do

9   business in Washington state.

10         The factors to be considered in Restatement § 188 do not lead to a clear conclusion of the

11   proper choice of law here.  Considerations in Restatement § 188 should also be evaluated with

12   the principles set out in Restatement § 6(2).  Restatement § 188(1)-(2).  The general underlying

13   principles set out in § 6(2) are:

14         (a) the needs of the interstate and international systems,

15         (b) the relevant policies of the forum,

16         (c) the relevant policies of other interested states and the relative interests of those
              states in the determination of the particular issue,

17         (d) the protection of justified expectations,

18

19         (e) the basic policies underlying the particular field of law,

20         (f) certainty, predictability and uniformity of result, and

21         (g) ease in the determination and application of the law to be applied.

22   Restatement (Second) of Conflict of Laws § 6(2) (1971).  These principles help evaluation of the

23   interests and policies of potentially concerned states and the extent to which those policies relate

24   to the transaction at issue. *Johnson v. Spider Staging Corp.,* 87 Wash.2d 577, 582 (1976).

ORDER ON MOTION FOR SUMMARY JUDGMENT - 11

1         a. **Needs of the Interstate and International Systems**.  This factor does not favor

2 application of any particular state's laws.

3         b. **Washington's Policies**. Washington's policies strongly favor application of

4 Washington law.  In Washington, insurance policies are considered to be unlike traditional

5 contracts, but "abound with public policies considerations," including that "policies should

6 operate to afford to affected members of the public – frequently innocent third persons – the

7 maximum protection possible consonant with fairness to the insurer."  *Oregon Auto. Ins. Co. v.*

8 *Salzberg*, 85 Wn.2d 372, 377 (1975).  "Washington has a paramount interest in the health and

9 safety of its people." *Canron, Inc. v. Fed. Ins. Co*., 82 Wn. App. 480 (1996).  Washington's

10 public policy interest in protecting innocent members of the public, like Mr. Beck, by ensuring

11 that its insurance laws are applied in Washington is strong.  There is no showing that application

12 of Washington law here is not fair to the insurance companies.  They each do business in

13 Washington and are regularly subject to Washington insurance law.

14         c. **Relevant Policies of Minnesota and Relative Interest in Minnesota in**

15 **Determination of the Issue**.  While Minnesota has an interest in application of its insurance law,

16 it has little or no connection with the events that give rise to this case.  In national coverage

17 cases, like these, Minnesota's interest is minimal.  The alleged negligent acts (construction) took

18 place in Washington as did Mr. Beck's injuries.

19         d. **Protection of Justified Expectations.**  This factor favors application of Washington

20 law.  The parties to the insurance contract were aware that construction may be taking place in

21 all 50 states.  They were aware that the laws of an individual state would apply.

22         e. **Basic Policies Underlying the Insurance Law**. As stated above, the basic policies

23 underlying insurance law favor application of Washington law.

24

f. **Certainty, Predictability and Uniformity of Result**.  Application of Washington law increases the certainty, predictability and uniformity of the result.  Parties who do business in Washington with insurance policies without choice of law provisions will be able to predict that Washington insurance law will apply to the insured's activities in Washington state.

g. **Ease in the Determination and Application of the Law to be Applied**.  This factor does not favor application of either state's law.  Both are relatively easy to determine and apply.

Considering all the factors, Washington has the "most significant relationship" to this case and Washington law applies.

**B. WASHINGTON SUBSTANTIVE LAW AND FEDERAL PROCEDURAL LAW APPLIES**

Under the rule of *Erie R.R. Co. v. Tomp*kins, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction, as is the case here, apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc*., 518 U.S. 415, 427 (1996).  In applying Washington law, the Court must apply the law as it believes the Washington Supreme Court would apply it. *Gravquick A/S v. Trimble Navigation Intern. Ltd*., 323 F.3d 1219, 1222 (9th Cir. 2003). "'[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.'" *Vestar Dev. II, LLC v. Gen. Dynamics Corp*., 249 F.3d 958, 960 (9th Cir.2001)(*quoting Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir.1996)).

**C. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

1   showing on an essential element of a claim in the case on which the nonmoving party has the

2   burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue

3   of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

4   for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

5   (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

6   metaphysical doubt."). Conversely, a genuine dispute over a material fact exists if there is

7   sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

8   the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986);

9   *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

10          The determination of the existence of a material fact is often a close question. The court

11   must consider the substantive evidentiary burden that the nonmoving party must meet at trial,

12   which is a preponderance of the evidence in most civil cases. *Anderson,* 477 U.S. at 254; *T.W.*

13   *Elect.,* 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the

14   nonmoving party only when the facts specifically attested by that party contradict facts

15   specifically attested by the moving party. The nonmoving party may not merely state that it will

16   discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

17   to support the claim. *T.W. Elect.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at

18   255). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts"

19   will not be "presumed." *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888–89 (1990).

20   **D.  MOTION FOR SUMMARY JUDGMENT ON DUTY TO DEFEND**

21          In Washington, "the duty to defend is different from and broader than the duty to

22   indemnify." *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wash.2d 398, 404 (2010)(*internal*

23   *citation omitted*). The duty to indemnify exists only if the insurance policy actually covers the

24

insured's liability, whereas the duty to defend arises when the policy could conceivably cover allegations in a complaint. *Xia*, at 6 (*internal citations omitted*). "[A]n insurer must defend a complaint against its insured until it is clear that the claim is not covered." *Id.* (*citing Am. Best Food*, at 405).

Mass Bay and Hanover's motion for summary judgment denying a duty to defend Northrup in the underlying litigation (Dkt. 33) should be denied. Based on the allegations in the *Beck* Second Amended Complaint, the policies at issue could conceivably apply. As to Northrup's potential liability, the alleged efficient proximate cause of Mr. Back's injuries was Northrup's negligent work building the O'Reilly Auto Parts Store. The anti-concurrent cause clauses in the exclusions are not enforceable in Washington. *Key Tronic* at 626. Mass Bay has a continuing obligation to continue to defend Northrup in the *Beck* case.

## E. MOTION FOR SUMMARY JUDGMENT DUTY TO INDEMNIFY

Mass Bay and Hanover's motion for summary judgment on its duty to indemnify (Dkt. 33) should be denied without prejudice. The underlying litigation is ongoing. It is not yet clear whether either insurance company will be required to indemnify Northrup for a judgment against it, if any.

## III.    ORDER

Therefore, it is hereby **ORDERED** that:

- Massachusetts Bay Insurance Company and Hanover Insurance Company Motion for Summary Judgment (Dkt. 33) **IS DENIED, as to the duty to defend** and **DENIED WITHOUT PREJUDICE as to the duty to indemnify.**

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 16th day of March, 2023.

ROBERT J. BRYAN
United States District Judge